# ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 14 2009

at 1 o'clock and 51 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. NO. 08-00564 SOM |
| ) | |
| Plaintiff, ) | ORDER DENYING MOTION TO |
| ) | STRIKE EX PARTE FILINGS |
| vs. ) | AND THE STATEMENTS OF THE |
| ) | BANKRUPTCY TRUSTEE AND HIS |
| JAMES LULL, ) | ATTORNEYS |
| ) | |
| Defendant. ) | |
| ) | |

ORDER DENYING MOTION TO STRIKE EX PARTE FILINGS
AND THE STATEMENTS OF THE BANKRUPTCY TRUSTEE AND HIS ATTORNEYS

Defendant James Lull has moved to strike the oral and
written statements submitted by the bankruptcy trustee to this
court. Those statements set forth the bankruptcy trustee's
concerns about whether Lull has hidden assets that should be
turned over to the trustee for distribution to creditors,
including the victims of Lull's criminal conduct. The court
denies the motion to strike.

The present order sets forth what the court would say
if the court ruled orally on the motion at the next sentencing
hearing, as the court originally intended to do. The court files
this written order so that the parties will know in advance of
the next sentencing hearing what materials the court is
considering. It is the court's thought that such advance
knowledge may assist the parties in preparing for the hearing.

The court turns first to 18 U.S.C. § 3661, which
provides, "No limitation shall be placed on the information

concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This statute clearly permits this court to receive the bankruptcy trustee's statements.

The bankruptcy trustee is not just a member of the public. The bankruptcy trustee is appointed by the Bankruptcy Court, which is an arm of this court. The trustee's job is to provide information to the Bankruptcy Court, which has also ordered the trustee to inform this court of his findings. The bankruptcy trustee could be said to function not as a third party, but as part of the court, in much the same way probation officers do in criminal cases, commissioners do in foreclosure cases, or special masters do in a variety of cases.

Even if this court ignored the court-appointed status of the trustee, this court would consider the trustee's statements. At the very least, the trustee could submit letters that would be akin to letters that are submitted every day to the court in connection with sentencing. It is very common for the court to receive letters from a defendant's relatives and friends, frequently describing the defendant's commendable traits or actions and urging leniency in sentencing. These letters often are gathered by counsel, but sometimes are sent directly to the sentencing judge, who routinely shares them with counsel.

2

Occasionally the court receives letters from people other than victims urging a high sentence.  The court does not see why the bankruptcy trustee cannot submit the equivalent of a letter.

Similarly, had the court received letters directly from the people who provided information to the trustee and whose statements the trustee relies on, the court would not have stricken those letters.  This does not mean that the court would necessarily give great weight to every letter received.  Indeed, the court is accustomed to receiving letters that appear uninformed and to giving them little or no weight.  For instance, letters supporting a defendant may state that the defendant is innocent, even though the defendant has pled guilty.  The court does not strike such letters, instead taking the error into account in determining what weight to give each letter.  As the letters are routinely shared with the parties, the letters may be freely challenged by the parties.  This judge's position is that a letter that is not shared with the parties cannot be relied on.  This judge recalls a letter sent directly to her in an unrelated case that she did not believe she could disclose to parties.  As the letter would have  affected her sentencing decision, this judge recused herself, sealed the letter, and recommended that the new judge taking over the case not view the sealed item.  Here, all material submitted to this judge has been disclosed to

3

the parties, and either party may argue about the weight, if any, to be given to any submission.

Lull characterizes this court as acting in an inquisitorial manner in receiving the bankruptcy trustee's statements. The court notes that none of the cases cited by Lull in that regard involves circumstances at all analogous to this case. Many of those cases refer to inquisitorial systems in the context of discussing the limits of appellate review. This court does not see the "inquisitorial" label as applicable here.

Putting aside the specter of torture evoked by Lull's use of the term "inquisitorial," the court notes that countries that currently use an inquisitorial system have judges who investigate cases, call witnesses, and determine the scope of witness examinations. In Germany, which has an inquisitorial system, a judge may decide to add charges against a defendant. In an inquisitorial system, the attorneys are far less active than in our accusatory system. Attorneys may be limited to submitting additional questions for a judge to ask. See Roberta Flowers, "An Unholy alliance: The Ex Parte Relationship Between the Judge and the Prosecutor," 79 Neb. L. Rev. 251, 264-65 (2000). This court is hard pressed to equate an inquisitorial system with this court's receipt of statements from a court-appointed trustee.

4

In characterizing this court as acting in an inquisitorial manner, Lull is not just saying that this court is mistaken in applying law.  Lull is saying that, in considering a the trustees' statements, this court is acting in an improper manner, going beyond a judge's role.  As it turns out, since the time Lull filed his motion to strike the trustee's statements, the Government has filed documents that expand on what the trustee submitted.  At this point, therefore, the court's consideration of the trustee's statements would largely mirror the court's consideration of a party's submissions.

However, given the tremendous respect this court has for Lull's counsel, this district's Federal Public Defender, the court takes the time here to articulate the court's thoughts on the subject of whether the court would step outside its proper role in considering something that a trustee submitted.  This judge's belief is that, even in our adversarial system, a judge does not automatically step outside of his or her proper role simply by considering something other than what the parties place before the judge, especially when the parties have the opportunity to challenge all nonparty submissions.

Although the present case involves the submission of allegedly factual material by a nonparty, the discussion may be illuminated by a review of what a court may do with legal issues. For example, the parties may agree that a particular statute must

be construed as saying either X, which one party may be
advocating, or Y, which the other party may be advocating.  If a
judge reads the statute as saying Z, the parties' agreement that
the statute says either X or Y does not render the judge who
selects Z "inquisitorial."  By the same token, even if the
parties agree that this court has subject matter jurisdiction
over a matter, the court may determine that it does not.
Notwithstanding the parties' assumption that the court has
jurisdiction, the court is required to determine for itself that
it does indeed have jurisdiction and must sua sponte raise any
issue it has concerning subject matter jurisdiction.  If a
judge's role in an adversarial system were confined to
considering what the parties presented the judge with, this could
not be done.

        To examine a situation closer to the one at hand, the
court notes that every day federal judges must decide whether to
accept or reject plea agreements.  A judge is not a rubber stamp.
A judge clearly may reject a plea agreement between the parties
if, for example, the judge determines that it does not adequately
reflect the seriousness of the conduct in issue.  Far from being
outside of a judge's proper role, it is the judge's duty to make
a decision as to whether to accept or reject a plea agreement.
In short, a judge does not necessarily act improperly, or in an

inquisitorial manner, by considering more than what the parties agree the judge should consider.

With respect to the trustee's factual assertions, Lull's argument would preclude a court from considering a probation officer's report. Lull's argument would also preclude consideration of a submission by a defendant's friend or relative discussing, for example, a defendant's charitable activities, heroism, or family sacrifices. The court sometimes receives letters from family members about how a lengthy prison term would hurt a defendant's child, or affect a disabled relative who depends on the defendant for care or financial support. The court routinely considers such matters in determining sentences. If Lull does not think such consideration renders this court "inquisitorial," why is consideration of the trustee's statements "inquisitorial"?

Here, the term "inquisitorial" appears particularly inapt because the trustee's statements were not matters that this judge sought out or obtained by independent investigation. The trustee's statements were offered to the court with the knowledge of the parties and, at least at the first sentencing hearing, without objection by any party.

The court now turns to Lull's complaint that, by commenting at the hearing on April 14, 2009, on the victims' statements and articulating concerns about the sentence, the

7

court invited nonparties to submit additional matters.  The
record makes it clear that the court's statements were not
intended to invite nonparty submissions, but instead to give Lull
notice that the court might sentence him to something higher than
what the parties had agreed to.  The court expressly stated that
the court wanted "to be fair to--especially to Mr. Wolff, who may
well want to respond to this."  The court went on to repeat,
"[C]learly I want to give notice to Mr. Wolff and his client so
that they can consider that, and I should continue the actual
decision on what the sentencing should be to allow them to
consider that and, if they are interested, to brief that for me.
So I would like to put those thoughts out, and I invite comments
by the parties on those thoughts."  Transcript of Hearing on
April 14, 2009, at 37 to 39.  Even if a byproduct of the giving
of notice to Lull was a decision by the trustee to seek leave to
submit additional information to the court, it does not follow
that it was improper for the court to have given that public
notice to Lull or to receive that additional information.  The
court notes further that the trustee was, in any event, obligated
to update this court.

        Finally, Lull's motion asks for an evidentiary hearing
on matters raised by the bankruptcy trustee.  The court will
address at the next sentencing hearing the issue of whether
witnesses will be called to testify about Lull's alleged

transactions in 2009 with Ken Vilkin and The Diamond Banque, and related matters raised in the Government's recent filing.  The court denies the request for an evidentiary hearing concerning other matters, including statements by Peter Shafer and Paul Veldhuis.  The court does not see how calling the bankruptcy trustee, Shafer, or Veldhuis as witnesses would advance the sentencing determination.  Even if Lull made the statements that Shafer and Veldhuis report, Shafer and Veldhuis would not be able to say whether, in so stating, Lull was telling the truth, as opposed to, for instance, just trying to buy himself more time to make payments.  In the absence of other concrete evidence concerning Lull's alleged statements, the court will not rely on those statements in determining the sentence.

In summary, the motion to strike the bankruptcy trustee's statements is denied, and the issue of an evidentiary hearing on the limited issues identified above is reserved for discussion at the next sentencing hearing.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 14, 2009.

Susan Oki Mollway
United States District Judge

United States v. Lull; Cr. No. 08-00564 SOM; ORDER DENYING MOTION TO STRIKE EX PARTE FILINGS AND THE STATEMENTS OF THE BANKRUPTCY TRUSTEE AND HIS ATTORNEYS

9